# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| HARVEY R. LEXING, INDIVIDUALLY AND AS NEXT FRIEND OF THE MINOR (EML) | * | CIVIL ACTION NO.  17-1092 |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| JOHN BEL EDWARDS IN HIS CAPACITY AS GOVERNOR OF THE STATE OF LOUISIANA, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are five pending motions:  1) a motion to dismiss for lack of subject matter jurisdiction, or alternatively for failure to state a claim upon which relief can be granted [doc. # 11]  filed by John Bel Edwards, in his capacity as Governor of the State of Louisiana; 2) a nearly identical motion to dismiss for lack of subject matter jurisdiction, or alternatively for failure to state a claim upon which relief can be granted [doc. # 12] filed by Marketa Garner Walters, Secretary of the Louisiana Department of Children and Family Services; 3) a related motion to dismiss for lack of subject matter jurisdiction, or alternatively for failure to state a claim upon which relief can be granted [doc. # 13] filed by Keesha Bordelon, individually, and in her official capacity as a staff attorney for the Department of Children and Family Services; 4) a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively, a motion for more definite statement [doc. # 17] filed by Albert E. Loomis, III, and Mary Hamilton, and 5) which Anika LaShaye Carston, adopted [doc. # 19].  The motions are opposed.  For reasons assigned below, it is recommended that the motions be GRANTED, and

that plaintiff's complaint be dismissed, in its entirety.

**Background**

a)     The Complaint

On August 30, 2017, Harvey Lexing, acting individually, and as next friend of his minor child, E.M.L., filed the instant "Complaint for Declaratory Judgment as to the Unconstitutionality of State Statutes, Damages, Stay Order, and for Injunctive Relief and Trial by Jury." (Compl.). Lexing invoked the court's federal question jurisdiction, 28 U.S.C. § 1331,[1] and asserted claims under 42 U.S.C. §§ 1983 and 1985(3) for violations of the Fourteenth Amendment. He seeks attorneys' fees under 42 U.S.C. § 1988, damages, and declaratory and injunctive relief. He also invoked the court's supplemental jurisdiction, 28 U.S.C. § 1367 to assert related state law tort claims and for violations of Articles 1-3 and 22 of the Louisiana Constitution.

Named defendants include: John Bel Edwards, in his capacity as governor and head of the executive branch for the State of Louisiana; Marketa Garner Walters, in her capacity as Secretary of the Louisiana Department of Children and Family Services ("DCFS"); Keesha Bordelon, individually, and in her official capacity as a staff attorney for DCFS; Jo Caston, individually, and in her official capacity as a deputy with the Ouachita Parish Sheriff's Office; Albert E. Loomis, III, individually, and in his official capacity as an attorney; Mary Hamilton, individually, as an employee of Albert E. Loomis, III; and Anika LaShaye Carston.

In August 2008, Anika LaShaye Carston gave birth to a baby girl, E.M.L. *See* Compl., ¶¶

---

[1] Plaintiff also invoked 28 U.S.C. § 1343. However, jurisdiction under 28 U.S.C. § 1343 is subsumed within the federal question jurisdiction statute, 28 U.S.C. § 1331. *Harris v. McDonald's Corp.*, 901 F. Supp. 1552, 1556-57 (M.D. Fla.1995) (§ 1331 alone suffices to establish jurisdiction over civil rights issues without invoking § 1343 because § 1331 is more comprehensive in scope between the two, and encompasses the subject matter of § 1343).

6, 15. Plaintiff, Harvey Lexing, was present for E.M.L.'s birth, and formally acknowledged her as his child after a DNA test confirmed that he was her biological father. *Id*. E.M.L. has lived at Lexing's residence continuously since early 2010. *Id*. In 2015, Lexing initiated a custody proceeding in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, in which he petitioned to be named domiciliary parent of E.M.L., and to be awarded temporary custody, pending a hearing on the matter. *Id*.; *see Lexing v. Carston*, No. 15-2513 (4th J.D.C. 2015).

The *Lexing v. Carston* case was assigned to Judge Stephens Winters. (Compl., ¶ 7). Judge Winters, however, was unavailable to sign the temporary custody order. *Id*. Thus, per his instructions, his secretary presented the pleadings and proposed order to Judge Carl V. Sharp, who signed the order on August 21, 2015, granting Lexing temporary custody of the then seven year old, E.M.L. *Id*.

On August 24, 2015, Anika LaShaye Carston consulted with attorney Albert E. Loomis, III, and then proceeded to remove E.M.L. from her school. *Id*., ¶ 8. Lexing had to contact local law enforcement to help locate E.M.L. to secure her return. *Id*.

Anika Carston boasted to Lexing that she had hired the best and most powerful lawyer in North Louisiana, who had connections with powerful people, including the judges. *Id*., ¶ 9. She guaranteed Lexing that she would obtain custody of E.M.L., receive a large sum of child support, and destroy plaintiff's reputation in the process. *Id*.

On August 31, 2015, Judge Winters' secretary telephoned Lexing and advised him that attorney Loomis had spoken with "Judge Winters and told him that the order signed by Judge Sharp was invalid and that Judge Winters is voiding it." *Id*., ¶ 10. Lexing conveyed to Judge

Winters' secretary his displeasure concerning the unethical and "illegal" ex parte contact by Loomis to Judge Winters. *Id*., ¶ 11. The secretary promptly consulted with Judge Winters who stated that he would schedule a telephone conference for September 3, 2015, with Loomis and Lexing. *Id*.

During the September 3, 2015, telephone conference, Judge Winters did not permit any discussion regarding his decision to void Judge Sharp's order. *Id*., ¶ 12. However, he agreed to issue an order not to interview E.M.L. or to discuss the case with her or in her presence. *Id*. Judge Winters directed attorney Loomis to draft the order, which did not have to be submitted to Lexing for approval. *Id*.

Mr. Loomis emailed a copy of the proposed order to Lexing, which prompted Lexing to send a letter to Judge Winters on September 4 objecting to the proposed order. *Id*., ¶ 12. Lexing requested a hearing to address the order stemming from the September 3 telephone conference. *Id*. Later that day, Judge Winters issued an order prohibiting ex parte communication with the court. *Id*.

On September 8, 2015, Judge Winters issued an order in open court stating that "neither the parties, their attorneys, nor anyone acting for them shall discuss the case in the presence of the minor child, nor shall they interview her." *Id*., ¶ 14. Judge Winters signed a written order to that effect on September 10, 2015. *Id*. That same date, however, Carston picked E.M.L. up from school and brought her to attorney Loomis's office, whereupon he instructed her to call him "Dr. Loomis." *Id*.

On September 21, 2015, a "Hearing Officer Conference" was held, which resulted in Lexing being named domiciliary parent of E.M.L. (Compl., ¶ 15). Carston was granted

4

visitation six days per month (every other Wednesday and every other weekend).  *Id*. Carston's

demand for custody, child support, and insurance were denied.  *Id*.

In October 2015, E.M.L. told Lexing that Carston had been taking her to attorney

Loomis's office, and that she did not like going there.  *Id*., ¶ 16.  Carston would leave her alone

at the office with either Loomis or his secretary, Mary Hamilton, who would try to talk to E.M.L.

about the case, and tell her untrue things about Lexing.  *Id*.

On November 5, 2015, Lexing filed a motion to recuse Judge Winters on account of his

continued bias, prejudicial actions, and favoritism towards Loomis.  *Id*., ¶ 18.  On November 6,

2015, Judge Winters recused himself, and the case was reassigned to Judge Wilson Rambo.  *Id*.

On November 12, 2015, Lexing transmitted a letter to attorney Loomis, in which he

demanded that Loomis cease and desist his "illegal conduct" with E.M.L.  *Id*., ¶ 19.

On November 15, 2015, E.M.L. told Lexing that Loomis, Mary Hamilton, Carston, and Carston's

parents were forcing her to tell lies.  *Id*., ¶ 20.

On November 16, 2015, E.M.L. told Lexing that Loomis was touching her

inappropriately.  *Id*., ¶ 21.

On November 17, 2015, Lexing contacted Child Protective Services ("CPS") to obtain

the names of professional persons that they use to interview and evaluate children.  *Id*., ¶ 21.

One of the individuals recommended by CPS was Dr. Lawanna Gunn-Williams.  *Id*.  Lexing

scheduled an appointment for E.M.L. with Dr. Gunn-Williams for November 20 and 23, 2015.

*Id*.  At the conclusion of her evaluation, Williams issued a report recommending that E.M.L.

remain domiciled with her father in her present home environment.  (Behavioral Evaluation;

Compl., Exh. 3).

Before Dr. Williams issued her report, however, Lexing contends that Carston and Loomis conspired to deprive Lexing and E.M.L. of their constitutional rights and to damage their reputation.  *Id*., ¶ 23.  On an unspecified date, Carston spoke with someone (possibly Lexing) on the telephone for approximately 90 minutes concerning what E.M.L. stated that Loomis and Carston's parents had done to her.  *Id*., ¶ 25.

As soon as the call ended, Carston telephoned "Loomis or an intermediary," and spoke for almost fifteen minutes.  *Id*., ¶ 25.  After that call, Carston immediately called the CPS Hotline and filed a false complaint against Lexing, stating that E.M.L. had told her that Lexing had molested her.  *Id*., ¶ 26.  After she called CPS, Carston called the Ouachita Parish Sheriff's Office and filed another false complaint.  *Id*., ¶ 27.  Carston then called "Loomis or an intermediary of his." *Id*., ¶¶ 28-30.

Apparently later that same evening, three Ouachita Parish Sheriff's deputies and DCFS agent, Brittany Godfrey, arrived at Lexing's residence.  *Id*., ¶ 31.[2]  Godfrey interviewed E.M.L., who repeated the same information that she had told her father about Loomis and Carston's parents.  *Id*., ¶ 32.

On December 8, 2015, E.M.L. was examined by Dr. Meade O'Boyle, apparently at the request of DCFS Agent Brittany Godfrey and Detective Jo Caston.  (Report; Compl., Exh. 4). The physician noted that there was a "bad custody battle going on," and that E.M.L. stated that both her parents talked bad about each other.  *Id*.  Dr. O'Boyle found no signs whatsoever of sexual molestation, but opined that if the parents did not cease their custody battle, E.M.L. would suffer emotional damage.  *Id*.

---

[2]  Jo Caston was not one of the deputies.  *Id*.

According to Lexing, the purpose of Carston's filing of the false complaint was to forever seal and prohibit the disclosure of anything in the DCFS report that E.M.L. had stated about Loomis and Carston's grandparents. *Id.*, ¶ 33. Moreover, Lexing and E.M.L.'s names were placed on the state police registry indicating that Lexing had been accused of molesting his daughter   a permanent stigma for both Lexing and E.M.L. *Id.*

Loomis also had Carston provide perjured testimony that E.M.L. told her that Lexing was coaching E.M.L. on what to tell others about Loomis. *Id.*, ¶ 34.

Dr. Williams made a mandatory report to DCFS about what E.M.L. had told her about Loomis and Carston's parents. *Id.*, ¶ 36. On November 25, 2015, DCFS notified Dr. Williams that an investigation was being conducted. (Nov. 25, 2015, Letter; Compl., Exh. 5).

On November 25, 2015, Ouachita Parish Sheriff deputies, Jerry Benson and Connie Miller went to Dr. Williams' residence to investigate the allegations against Loomis and Carston's parents. *Id.*, ¶ 37. Thereafter, the deputies went to Lexing's residence to interview him about the allegations against Loomis and Carston's parents. *Id.* Before the interview started however, deputy Benson received a phone call, upon completion of which, he advised Lexing that Jo Caston would be handling the investigation. *Id.*

As it turns out, on November 25, 2015, Carston had filed another complaint against Lexing with the Monroe Police Department. *Id.*, ¶ 38. On November 26, 2015, Carston filed yet another complaint against Lexing with the Ouachita Parish Sheriff's Office. *Id.* Two deputies were dispatched to Lexing's residence, but Lexing persuaded them that the complaint was harassment. *Id.* On the afternoon of November 26, 2015, Carston filed another complaint against Lexing with the Monroe Police Department. *Id.*

Carston posted additional allegations against Lexing on Facebook and GoFundme.com, which has impacted Lexing and E.M.L.'s constitutional rights to free association with friends, to attend parties, to have play dates, and sleepovers. *Id.*, ¶ 39.

On December 3, 2015, E.M.L. was interviewed by Jennifer Graves, CPS Agent Brittany Godfrey, and possibly Jo Caston. (Compl., ¶ 46, Exh. 8). E.M.L. repeated her allegations against Loomis and Carston's parents. *Id.* However, the interviewers felt that E.M.L. may have been coached. (Compl., Exh. 8). The investigator did not speak with Loomis, because the alleged inappropriate contact occurred in the city of Monroe. *Id.* A copy of the report was to be forwarded to the Monroe Police Department for their follow-up with Loomis. *Id.* The case was marked as closed. *Id.* The Monroe Police Department has no record of receiving a request from the Ouachita Parish Sheriff's office to investigate Loomis concerning the allegations by E.M.L. (Compl., Exh. 9).

According to Lexing, Deputy Caston's report is full of knowing and intentionally false statements, distortions, and misrepresentations intended to hurt E.M.L. and Lexing, and to favor Loomis. *Id.*, ¶ 50. Lexing took issue with Caston's statements and conclusions in her report, and faulted her handling of the investigation of Carston's parents, which he likened instead to a "social visit." *Id.*, ¶¶ 51-55.

In early December 2015, Lexing contacted Detective Jo Caston to inquire about the status of the investigation of Loomis and Carston's parents. *Id.*, ¶ 40. Caston informed Lexing that she was not investigating them, she was investigating Lexing. *Id.*

On December 19, 2015, Lexing filed a motion to disqualify Loomis and for contempt for violating Judge Winters' order, and for inappropriately touching E.M.L. *Id.*, ¶ 42. Lexing amended his motion to disqualify Loomis on January 13, 2016. *Id.*

In January 2016, Lexing's attorney, Carol Powell-Lexing, issued DCFS a subpoena duces

tecum requesting the investigative files and report filed by Lexing against Carston. *Id.*, ¶ 43.

On February 8, 2016, Keesha Bordelon, acting in her capacity as a DCFS staff attorney and "in collusion with" Loomis, filed a motion to quash the subpoena duces tecum pursuant to Louisiana Children's Code Article 615(E). *Id.*, ¶ 44. In her motion, Bordelon claimed that the information was confidential because the complaint concerning E.M.L. had been determined to be not justified/invalid. *Id.* According to Lexing, Bordelon knowingly and intentionally falsely represented to the court and to plaintiff that a not justified/invalid determination also had been made as to the allegations against Loomis. *Id.*

Lexing alleged that Bordelon and Loomis conspired to provide false information, knowing that without the DCFS investigation and report, it would prove difficult to refute their false claim. *Id.*, ¶ 45. Judge Rambo granted DCFS's motion to quash the subpoena. *Id.*

A hearing on Lexing's motion to disqualify Mr. Loomis was re-scheduled (for the fourth time) for August 31, 2016. *Id.*, ¶ 56. When confronted before the hearing, attorney Keesha Bordelon admitted that DCFS did not investigate Loomis, but then proceeded to "false[ly]" represent that the case had been referred out to law enforcement. *Id.* Bordelon also re-filed the same motion to quash that she had filed on February 8, 2016, in violation of the court's notice requirements. *Id.* Bordelon explained that she delayed in filing the motion because DCFS employee Godfrey only recently had been served. *Id.* Godfrey, however, was served on August 10, 2016, three weeks earlier, yet still did not appear for the hearing. *Id.*

On September 7, 2016, Lexing filed a suit for personal injuries against Loomis for damages suffered by Lexing and E.M.L, *Lexing v. Loomis*, No. 16-2753 (4th J.D.C.). (Compl., ¶ 67). The suit was assigned to Judge Rambo. *Id.*

On November 7, 2016, Lexing filed a motion to recuse Judge Rambo on the basis of the judge's alleged pattern of bias and prejudicial conduct. (Compl., ¶ 68). Lexing supplemented his

motion to recuse on March 28, 2017.  *Id*.  The motion to recuse was assigned to Judge Alvin R. Sharp.  *Id*.  Lexing contends that Loomis improperly contacted Judge Sharp ex parte.  *See* Compl., ¶¶ 71-74.

Lexing issued a subpoena to Judge Rambo requiring production of a log of his telephone and cell phone calls.  *Id*., ¶ 81.  On May 24, 2017, Judge Rambo filed a motion to quash the subpoena and a motion for protective order pursuant to Louisiana Code of Evidence Article 519.  *Id*., ¶ 82.  On June 14, 2017, Lexing filed a petition for declaratory judgment seeking to hold Louisiana Code of Evidence Article 519 unconstitutional.  *Id*., ¶ 83.  Judge Sharp, however, did not set the constitutional challenge for hearing prior to the July 19, 2017, hearing on Lexing's motion to recuse Judge Rambo.  *Id*., ¶ 84.

Lexing contends that the following statutes and articles are unconstitutional on their face, and as applied:  Louisiana Children's Code Articles 615(E), 615(E)(1), 616(F), 616.1(A), 616.2(3); Louisiana Revised Statutes 46:56(F)(1), 46:56(F)(8)(a)(b), 46:56(F)(9)(g), 46:56(F)(11), 46:56(F)(12)(a)(b), 46:56(H)(11)(2)(3); Louisiana Code of Evidence Article 519; and all statutes related to enforcement of the foregoing statutes.  *Id*., ¶ 99.

Plaintiff contends that the state court proceedings should be stayed until this court resolves the constitutionality of the state laws at issue.  *Id*., ¶ 130.  He maintains that the state court has refused to set the challenges for hearing, thus forcing plaintiff to proceed without required evidence.  *Id*.

Plaintiff enumerated eight causes of actions for violations of his rights to due process and equal protection, plus a conspiracy to effect same under federal law.  He set forth a "non-exhaustive" list of 31 rights that defendants violated.  In addition, he asserted violations of his rights to due process, equal protection, and to a fair trial under Articles 1-3 and 22 of the Louisiana Constitution.  He also alleged a state law tort claim against defendants for making

false statements and conspiring against him.

Plaintiff seeks a judgment declaring the unconstitutionality of the aforementioned state laws and finding that defendants violated his constitutional rights.  He also seeks a judgment enjoining enforcement of the unconstitutional provisions.  In addition, he seeks an order removing his name and all information about him from any registries upon which it was placed. Plaintiff prays for pecuniary and punitive damages, attorney's fees and costs.

b)      Pending Motions

On November 3, 2017, defendants, John Bel Edwards, Marketa Garner Walters, and Keesha Bordelon filed separate, yet overlapping, motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Between December 12 and 20, 2017, plaintiff filed responses to each of the motions.  [doc. #s 29, 30, & 33]. Edwards, Walters, and Bordelon did not a file a reply brief, and the time to do so has lapsed.  *See* Notice of Motion Setting [doc. # 15].

On November 15, 2017, defendants, Albert Loomis, III, and Mary Hamilton, filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, or alternatively, a motion for more definite statement.  On November 21, 2017, defendant Anika LaShaye Carston adopted Loomis and Hamilton's motion, seeking the same relief requested by Loomis and Hamilton.  On December 23, 2017, plaintiff filed her opposition memoranda.  [doc. #s 34 & 35].  On January 3 and 10, 2018, movants filed their reply briefs.  [doc. #s 38 & 41].  Thus, the matter is ripe.

## **Discussion**

Several of the motions raise identical arguments.  To minimize repetition, the court first will address some of the common arguments, particularly the ones directed towards the court's exercise of jurisdiction.  Thereafter, the court will proceed to consider merits-related arguments

pertaining to plaintiff's federal law claims.

## I.      Jurisdictional Arguments

It is manifest that this court enjoys subject matter jurisdiction to entertain this matter via federal question, 28 U.S.C. § 1331.  Under certain circumstances, however, the court must decline to exercise otherwise extant jurisdiction.  For example, if the *Rooker-Feldman* doctrine applies, the court lacks subject-matter jurisdiction over the dispute.  *Jones v. Louisiana*, No. 15-1816, 2016 WL 5720623, at *2, n.2 (W.D. La. Sept. 29, 2016) (citing *inter alia, Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994)).  Also, a party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction.  *Mahogany v. Louisiana State Supreme Court*, 262 Fed. Appx. 636 (5th Cir. Jan. 25, 2008) (citations omitted).

a)      Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)).  The party seeking to invoke jurisdiction bears the burden of demonstrating its existence.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497

(5th Cir.2016) (citations and internal quotation marks omitted).

b)    *Rooker-Feldman* Doctrine

The *Rooker Feldman* doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir.2004) (citation omitted). The doctrine comprises four elements: "(1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the district court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir.2017) (citations omitted). The doctrine, however, applies only to "final judgment[s] rendered by a state's court of last resort." *Id.* (citation omitted).

Here, there are no facts to suggest that there was a *final* judgment in the underlying state court action(s) that plaintiff is seeking to overturn. Thus, by its terms, *Rooker-Feldman* is inapplicable.

c)    Domestic Relations Exception

Under the domestic-relations exception, federal courts lack jurisdiction to "issue divorce, alimony, and child custody decrees." *Estate of Merkel v. Pollard*, 354 Fed. Appx. 88, 92 (5th Cir.2009) (citation omitted). This exception to federal jurisdiction is founded on "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." *Rogers v. Janzen*, 891 F.2d 95, 97 98 (5th Cir.1989) (citation omitted).

In this suit, plaintiff does not does not seek the issuance or modification of a child custody decree per se. Thus, the domestic relations exception is inapplicable. *Saloom v. Texas Dep't of Family & Child Protective Servs.*, 578 Fed. Appx. 426, 429 30 (5th Cir.2014).

Furthermore, the exception "obtains from the diversity jurisdiction statute . . . and therefore it has no application where, as here, there exists an independent basis for federal jurisdiction." *Estate of Merkel, supra* (citation omitted); *see also Thomas v. State*, No. 17-0348, 2018 WL 1308275, at *12 (N.D. Tex. Feb. 13, 2018), R&R adopted, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) ("The domestic relations exception does not apply to the court's consideration of federal question jurisdiction.").

      d)    <u>Eleventh Amendment Immunity</u>

      Plaintiff sued Governor Edwards and Secretary Walters only in their official capacities. However, he sued Bordelon in both her individual and official capacities. This section is limited to plaintiff's official capacity claims against these defendants.

      Movants contend that they are entitled to Eleventh Amendment immunity. It is well settled that

> [t]he Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department. Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent to abrogate the bar.

*Darlak v. Bobear*, 814 F.2d 1055, 1059 (5ᵗʰ Cir. 1987) (citation omitted).

Section 1983 does not abrogate a state's sovereign immunity. *Hanna v. LeBlanc*, 716 Fed. Appx. 265, 268 (5th Cir.2017); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309 (1989). In addition, Louisiana has refused to waive its Eleventh Amendment immunity from suit in federal court. La. R.S. 13:5106; *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). Indeed, the state defendants specifically invoked immunity via the instant motions. Finally, the DCFS is an arm of the state, and therefore eligible for Eleventh Amendment protection. *Cummings v. Louisiana Dep't Children & Family Servs.*, No. 14-3362, 2015 WL 5015311, at *1 n.2 (W.D. La. Aug. 21, 2015) (and cases cited therein).

      With respect to plaintiff's claims against Bordelon in her official capacity, it is manifest

that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Consequently, the Eleventh Amendment bars suit against state officials and employees of state entities, acting in their official capacities. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir.1994) (plaintiff cannot evade Eleventh Amendment by suing state employees in their official capacity).

In response to defendants' motions, plaintiff concedes that he is not seeking damages against the State, Governor Edwards, Secretary Walters, or Bordelon (in her official capacity). Rather, he is seeking a declaratory judgment as to the constitutionality of various state statutes and injunctive against their enforcement. Indeed, the *Ex parte Young* doctrine[3] recognizes an exception to Eleventh Amendment immunity for claims of prospective injunctive or declaratory relief against a state official. In other words, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs . . . is barred." *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citation omitted).

Relatedly, movants contend that when, as here, they were sued in their official capacities, they are not "persons" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the

---

[3] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908).

State.'" *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 3106, n. 14; *Ex parte Young*, 209 U.S. 123, 159  160, 28 S.Ct. 441 (1908)).

In short, plaintiff's claims for prospective declaratory and injunctive relief against Governor Edwards and Secretary Walters   the only claims that he is advancing against these defendants   plus his official capacity claim against Bordelon, are not barred by the Eleventh Amendment, and therefore, are redressable[4] under § 1983.

    e)    Younger Abstention

Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971), "federal courts must refrain from considering requests for injunctive or declaratory relief based upon constitutional challenges to ongoing state civil proceedings." *Price v. Porter*, 351 Fed. Appx. 925, 927 (5th Cir. Nov. 2, 2009) (citation omitted).[5]  Courts apply a three-prong test for determining whether the *Younger* abstention doctrine is applicable:  "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir.2004) (citation omitted).  Once this test is satisfied, then the federal court is obliged to abstain, unless: "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the

_____

    [4] The *Ex parte Young* exception "only applies when the named defendant state officials have some connection with the enforcement of the act and 'threaten and are about to commence proceedings' to enforce the unconstitutional act." *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir.2001) (en banc).  Defendants did not contest that they satisfy the foregoing criteria for relief. Moreover, the undersigned finds that they have at least *some* connection to enforcement of the challenged statutes and rules.

    [5] "Although *Younger* abstention originally applied only to criminal prosecutions, it also applies when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir.2008) (internal citations and quotation marks omitted).

federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived." *Id*. (citations omitted).

Applying the foregoing considerations here, the court initially finds that the instant constitutional challenges to certain state statutes and articles regarding child abuse investigations and subpoenas issued to judges are matters in play in the underlying state court proceedings.  The contested provisions implicate Lexing's ongoing efforts to recuse a state court judge(s), and to re-direct the allegations of child abuse from himself to attorney Loomis and Carston's parents, via access to the investigation records.  The court also readily finds that Louisiana has an important interest in its own domestic or family relations laws, which is sufficiently broad to encompass child abuse investigation processes.  *See Estate of Merkel*, (citing *inter alia*, *Moore v. Sims*, 442 U.S. 415, 435, 99 S.Ct. 2371 (1979)).  Moreover, the state has an important interest in administering its judicial system, which would encompass rules limiting their judges's exposure to misuse of the subpoena process.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12, 107 S.Ct. 1519, 1527 (1987) (citations omitted) (noting earlier decision abstaining from hearing challenge to state's contempt process).

In addition, there is no question but that the state court proceedings afford plaintiff an opportunity to raise his constitutional challenges.  In fact, Lexing *did* contest the constitutionality of Louisiana Code of Evidence Article 519.  Moreover, there is nothing preventing him from raising constitutional challenges to the remaining state laws    insofar as he has not already done so.  Moreover, although *Younger* abstention presupposes an adequate state court remedy, it only requires an *opportunity* to present the federal claim in state court.  *Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988) (citation omitted).  Plaintiff certainly has that opportunity.  In other

17

words, Lexing is at liberty to assert his federal claims through final decision by the Louisiana

courts and thereafter to seek review in the United States Supreme Court. *Duke v. State of Tex*,

477 F.2d 244, 253 (5th Cir.1973).

> As the Supreme Court has recognized,

> [a] civil litigant may, of course, seek review in this Court of any federal claim
> properly asserted in and rejected by state courts. Moreover, where a final decision
> of a state court has sustained the validity of a state statute challenged on federal
> constitutional grounds, an appeal to this Court lies as a matter of right. 28 U.S.C.
> § 1257(2). Thus, appellee in this case was assured of eventual consideration of its
> claim by this Court. But quite apart from appellee's right to appeal had it
> remained in state court, we conclude that it should not be permitted the luxury of
> federal litigation of issues presented by ongoing state proceedings, a luxury which,
> as we have already explained, is quite costly in terms of the interests which
> *Younge*r seeks to protect.

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605  07, 95 S.Ct. 1200, 1209 (1975).

The same thing may be said for plaintiff's constitutionality claims here.

Further, "*Younger* abstention also allows federal courts to avoid interpreting state laws

that would result in the unwarranted determination of federal constitutional questions." *Health

Net, Inc. v. Wooley*, 534 F.3d 487, 495 (5th Cir.2008) (citations and internal quotation marks

omitted). In fact, the state court might be able to resolve the issue on state law grounds, and

therefore obviate the need to address the federal constitutional issue. *Id*. Those circumstances

are present here. Judge Rambo may decide to recuse himself or even to provide testimony

without the need for a subpoena. Furthermore, the state court could disqualify Mr. Loomis

without the need for additional investigative records, and order the state to expunge any record of

the investigation of Lexing.[6] Alternatively, the state court could apply the statutes in such a way

as to avoid any basis for a federal constitutional challenge   short of ruling in Lexing's favor on

---

[6] To the extent that it could be argued *Younger* does not apply unless the State is party to
the pending state court proceedings, the court observes that the state, via attorney Bordelon, has
appeared in the underlying suit pursuant to a motion to quash. Moreover, the attorney general
must be served with a copy of the proceeding that challenges a statute, as he is entitled to be
heard on the matter. La. Code Civ. P. Art. 1880.

all issues.  Regardless, Louisiana should have the opportunity to apply and interpret the challenged statutes and rules so as to avoid the constitutional question.  *Health Net, Inc., supra*.

Finally, plaintiff has not established any of the circumstances that would counsel against application of *Younger* here.  While the state district court may have delayed a hearing on his constitutionality challenge, that does not mean that it will never rule on the issues, or that if it does not, Lexing will not be able to obtain redress upon appeal.

The court further notes that while the state defendants did not urge dismissal on the basis of *Younger*, there is no indication that they consciously waived abstention on that basis.  Regardless, the courts may raise *Younger* abstention on their own.  *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir.2003); *Spooner v. Gautreaux*, No. 11-0089, 2011 WL 13183107, at *2 (M.D. La. June 20, 2011), R&R adopted, 2011 WL 13192921 (M.D. La. July 15, 2011), aff'd, 459 Fed. Appx. 436 (5th Cir.2012).  In addition, plaintiff took the opportunity to address *Younger*'s applicability in at least of one his briefs.  (Pl. Response Memo., pg. 14 [doc. # 28]).[7]

In sum, the court finds that *Younger* applies to plaintiff's claims for prospective and injunctive relief against Edwards, Walters, and Bordelon (in her official capacity), and thus, those claims, including the related challenges under analogous provisions of the state constitution are subject to dismissal.  *Price v. Porter*, 351 Fed. Appx. 925, 927 (5th Cir.2009) (and cases cited therein).

## II.    Merits-Related Arguments

a)    <u>Standard of Review</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

---

[7]  Plaintiff contends that he is not seeking to enjoin the state court proceedings; he merely is seeking a stay until this court decides the constitutionality of the specified state statutes and rules.  (Pl. Response Memo., pg. 14 [doc. # 28]).  It is manifest however that a stay of state court proceedings constitutes an injunction.  *See e.g.*, 28 U.S.C. § 2283.

a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*.  (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*.  Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827

(1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5ᵗʰ Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id*.

    b)    <u>Section 1983</u>

        i)    *General Principles*

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id*.  (citation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994).  The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all.  *Id*.  *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).  Moreover, in order to plead a § 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."  *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  Thus, a successful § 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th

Cir. 1986).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

ii)     *Bordelon*

Plaintiff contends that Keesha Bordelon violated his right to due process by making false representations to the court.  Specifically, he alleges that on February 8, 2016, Bordelon intentionally misrepresented that attorney Loomis had been investigated by DCFS and cleared of abusing E.M.L.  On August 31, 2016, Bordelon admitted to the court that DCFS had *not* investigated Loomis, but then falsely represented that the matter had been referred out to law enforcement.  Bordelon also purportedly filed an untimely motion to quash.

The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law."  UNITED STATES CONSTITUTION, AMENDMENT XIV.  However, a claim for random deprivation of a protected liberty interest or personal property is not cognizable under § 1983.

In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908 (1981), an inmate claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that although the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, the State's post-deprivation tort remedy provided him with all the process that was due. *Parratt,* 451 U.S. at 536-37, 101 S.Ct. at 1913. In other words, the Due Process Clause does not embrace tort law concepts.

In fact, the Due Process Clause is not implicated even in instances where an intentional deprivation has occurred, provided an adequate state post-deprivation remedy is available, and so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994). This principle (known as the *Parratt/Hudson Doctrine*) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

The Supreme Court confirmed that *Parratt/Hudson* applied to a deprivation of liberty interests. *Zinermon, supra*. Moreover, the Fifth Circuit applied the doctrine to claims of a judicial conspiracy, which it characterized as a matter of procedural, not substantive due process. *Holloway v. Walker*, 784 F.2d 1287, 1293 (5th Cir.1986).

Here, plaintiff's allegations demonstrate that a random and unauthorized deprivation occurred when Bordelon uttered her misrepresentations to the court. In fact, Lexing alleges that in so doing Bordelon violated state criminal laws. Moreover, under Louisiana law, an aggrieved plaintiff has the opportunity to seek redress for negligent acts or intentional torts committed by someone else. La. Civ. Code Art. 2315. This general tort provision of the Louisiana Civil Code

accords plaintiff all the process that is required, thereby obviating the basis for his procedural due process claim. *See Charbonnet v. Lee*, 951 F.2d 638, 642 (5th Cir. 1992).

The *Parratt/Hudson* doctrine, however, does not bar violations of plaintiff's substantive due process rights. *Cozzo v. Tangipahoa Parish Council--President Government*, 279 F.3d 273, 290 (5th Cir. 2002) (citation omitted). "The Fourteenth Amendment guarantees '[s]ubstantive due process [, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Rogers v. Lee Cty., Mississippi*, 684 Fed. Appx. 380, 390 (5th Cir.2017) (citations omitted). To prevail on this claim, plaintiff must show that defendant intentionally or knowingly presented false evidence or fabricated evidence. *Id*. Moreover, defendant's action must "shock the conscience." *Id*. Mere mistake does not suffice. *Id*.

Plaintiff, however, only makes conclusory allegations that Bordelon "knowingly and intentionally" made false representations to the court. Moreover, review of the report purportedly rendered by Jo Caston undermines the plausibility of any ill intent on behalf of Bordelon. During the interview, E.M.L. described the alleged actions of Carston's parents and Mr. Loomis. (Report; Compl., Exh. 8). According to the report, the investigator and the "CAC" staff felt that E.M.L. may have been coached on what to say. *Id*. Although the investigator spoke to Carston's parents, she explained that she did not speak to Mr. Loomis because the conduct pertaining to him allegedly occurred in the City of Monroe. *Id*. The investigator indicated that the report would be forwarded to the Monroe Police Department for their follow-up with Loomis. *Id*.[8] Meanwhile, the investigator marked the case "closed," and forwarded the

_____

[8] Plaintiff obtained a letter from the Monroe Police Department stating that they had no record of ever receiving anything from the Ouachita Parish Sheriff's Office regarding an investigation into Loomis's alleged interactions with E.M.L. (Dec. 16, 2016, Letter; Compl., Exh. 9). However, there is no indication that Bordelon was privy to that letter at the time she told the judge that the matter had been referred to law enforcement. Moreover, the report stated

matter to the district attorney for review.  *Id*.  The fact that E.M.L.'s interviewers believed that she had been coached certainly explains why Bordelon mistakenly may have said that Carston's parents and Loomis all had been cleared.

In short, plaintiff does not allege *facts* to plausibly show that Bordelon intentionally misled the court.  Rather, when the error was called to her attention, Bordelon corrected her misstatement.  As such her conduct does not shock the conscience.[9]

Plaintiff further alleges that Bordelon violated his and E.M.L.'s right to equal protection. The Equal Protection Clause of the Fourteenth Amendment essentially requires a state actor to treat all similarly situated persons alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).  To state an equal protection claim, a § 1983 plaintiff must allege either that "(a) a state actor intentionally discriminated against [him] because of membership in a protected class [,] or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins.   Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (citations and internal quotation marks omitted).  To survive the pleading stage on a race-based discrimination claim under the Equal Protection Clause a plaintiff must allege facts to show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.  *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (citations omitted).

Here, aside from alleging that plaintiff and his daughter are "persons of color," the

---

that a copy had been forwarded to the district attorney, which, in a broad sense, may be considered law enforcement.

[9] Bordelon's dilatory filing of a motion to quash also does not shock the conscience.  To the extent that her rationale for the late filing was incorrect (i.e., service of the subpoena was untimely), plaintiff immediately should have brought the error to the attention of the hearing judge.

complaint lacks any *factual* allegations to establish that any purported unequal treatment by Bordelon stemmed from discriminatory intent or animus.  Accordingly, plaintiff's complaint fails to state a claim for race-based discrimination under the Equal Protection Clause.  *See Bowlby, supra* (no factual allegations that defendants' actions were the result of intentional discrimination); *Smith v. Kimbhal*, 421 F. App'x 377, 379 (5th Cir. 2011) (conclusory assertions of improper motive or retaliatory animus do not suffice to overcome a Rule 12(b)(6) dismissal); *Jabary v. City of Allen*, 547 Fed. Appx. 600 (5th Cir. 2013) (conclusory allegations that defendants undertook their activities because of plaintiff's membership in certain classes failed to state a claim for relief).

Plaintiff also contends that Bordelon conspired with Loomis, Carston, the state court judge(s), and others to deprive him of his due process and equal protection rights.  To support a conspiracy claim under § 1983, plaintiff must allege facts that suggest: "1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights."  *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994) (internal citations omitted).  Here, aside from conclusory allegations, plaintiff has not adduced facts to support a finding that Bordelon had an "agreement" with anyone.  "Bald allegations that a conspiracy existed are insufficient." *Nall v. Stringer*, 4 F.3d 989 (5th Cir.1993) (citations omitted).[10]

Insofar as plaintiff suggests that defendants' ex parte contact with the state court judge(s) evidenced a conspiracy to fix the case, the Fifth Circuit has found such allegations wanting:

---

[10]  In *Nall*, the Fifth Circuit found that the following allegations did not suffice to support a conspiracy:

> (1) defendants discussed the case at meetings and during phone calls between and among the parties; (2) the Chancery Court ordered the guardian ad litem to obtain information against Nall; (3) the Chancery Court granted relief to the Stringers without notice to Nall; and (4) as a result of the conspiracy, the Chancery Court entered an order depriving him of his parental rights.

*Id.*

> [p]laintiffs appear to argue that Mrs. McClure, apparently a lawyer, conspired with one of the judges to "fix" the custody case. Assuming arguendo that Mrs. McClure had ex parte conversations with the judge, there is no allegation that the suit was predetermined or "fixed." We find only a complaint that the conversations were improper. Despite the trappings of a suit for damages, this claim is no more than an attempt to have the district court review the result of the custody proceedings. This the federal court may not do . . . Plaintiffs have failed to state any claim upon which the federal court can grant relief.

*Krempp v. Dobbs*, 775 F.2d 1319, 1322 (5th Cir.1985).

In sum, plaintiff has failed to allege facts which plausibly suggest that defendant, Bordelon, violated his or E.M.L.'s constitutional rights. Accordingly, defendant is entitled to qualified immunity, dismissing plaintiff's federal law claims against her.[11]

  iii) *Caston*

The court notes that Jo Caston did not file a motion to dismiss   no doubt, at minimum, because there is no record that she was ever served with the complaint and summons. *See* docket sheet. Nevertheless, Caston is entitled to dismissal on similar grounds to the moving defendants. *Lewis v. Lynn*, 236 F.3d 766, 768, 236 F.3d 766 (5th Cir. 2001) (where defending party establishes that plaintiff has no cause of action, the defense generally inures to the benefit of a non-appearing co-defendant).[12]

Plaintiff essentially alleges that Caston violated his due process and equal protection rights by conspiring and failing to adequately investigate the abuse allegations against Loomis and Carston's parents, and by completing a false report thereafter. However, a faulty abuse investigation does not, without more, rise to the level of an unconstitutional investigation.

---

[11] Having determined that Bordelon did not violate plaintiff's constitutional rights, the court need not reach the second prong of the qualified immunity analysis, i.e., whether her actions were objectively unreasonable under clearly established at the time.

[12] The instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir.1998)).

*Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 106 (2d Cir.1999).  Moreover, there is no constitutional right to have someone else criminally prosecuted.  *Donahue v. Strain*, No. 15-6036, 2017 WL 3311241, at *15 (E.D. La. Aug. 3, 2017) (citation omitted).  Consequently, any alleged act or failure to act by Caston that interfered with plaintiff's pursuit of abuse allegations against Loomis and Carston's parents does not violate plaintiff's due process rights. *Id*.  (citation omitted).  Moreover, plaintiff does not allege facts to show that Caston acted out of a cognizable discriminatory intent.  There also are no facts alleged to show that Caston had an agreement with anyone else to conspire against plaintiff.

In short, aside from conclusory allegations of intentionally false statements, collusion, and conspiracy, plaintiff fails to set forth facts to support a claim that Caston violated his rights under the U.S. Constitution.  Accordingly, she too is entitled to qualified immunity as to these claims.

Insofar se plaintiff also sued Caston in her official capacity as a Ouachita Parish Sheriff's deputy, the court reiterates that official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, *supra*. To impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity.  *Kohler v. Englade*,  470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)).  "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff."  *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation by Caston in her individual capacity.  *A fortiori*, he has not identified a precipitating

unconstitutional custom or policy enacted by the government entity.  *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (because the officers did not violate plaintiff's constitutional rights, neither did the city).

Insofar as plaintiff seeks to hold the Sheriff liable in his supervisory capacity (albeit, without suing him by name), the court notes that supervisors can be held liable when the "enforcement of a policy or practice results in a deprivation of federally protected rights." *Bustos, supra* (citation omitted).  Again, however, because plaintiff has failed to allege or establish a constitutional violation by the individual directly involved in the challenged activity, he cannot show that any supervisor implemented a policy or custom that violated his constitutional rights.  *Bustos*, 599 F.3d at 468.  Dismissal of plaintiff's official capacity claim necessarily follows.

iv)    *Loomis, Hamilton, and Carston*

Plaintiff's allegations against Al Loomis and Anika Carston are vast and extensive.  *See* discussion, supra.  His allegations against Mary Hamilton are more circumscribed.  Along with the allegations of conspiracy and collusion, he contends that Hamilton signed a false affidavit and endeavored to turn E.M.L. against him.

Initially, defendants contend that plaintiff's federal law claims against them are time-barred.  Statutes of limitations serve as absolute bars to suit.  *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir.2012).  However, there is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983.  *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). Therefore, the courts must borrow the forum state's limitations period for personal injuries, including the state's provisions on tolling    so long as application of the rules does not undermine the goals of the federal statute at issue.  *Id*. (citations omitted); *Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 2000 (1989) (citation omitted).

In Louisiana, delictual actions are subject to a liberative prescription period of one year. La. Civ. Code Art. 3492.  The Louisiana Civil Code provides that prescription runs against all persons, including absent persons and incompetents, unless exception is established by legislation.  La. Civ. Code Art. 3467-3468.  Louisiana recognizes three potential avenues to retard the running of prescription:  suspension, interruption and renunciation.  *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993).[13]

Although state law governs the limitations period and tolling exceptions, federal law determines when a cause of action arises.  *Jackson, supra* (citation omitted).  "A cause of action under § 1983 accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action."  *Ramon v. Rodriguez-Mendoza*, 372 Fed. Appx. 494 (5th Cir. April 1, 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995)).  Furthermore, the continuing-tort doctrine is one of accrual and thus a question of federal law.  *Nottingham*, 499 Fed. Appx. at 375 (citation omitted).  "When a tort involves

---

[13] Longstanding Louisiana jurisprudence recognizes a limited suspensive exception founded on the ancient civilian doctrine of *Contra non valentem agere nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues."  *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321 (La. 1979) (citations omitted).  Typically,

> the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases." *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974), *vacated*, 422 U.S. 563, 95 S.Ct. 2486, and *vacated sub nom. Gumanis v. Donaldson*, 422 U.S. 1052, 95 S.Ct. 2673 (1975); *see also Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir.1980).

Here, plaintiff alleges that he continues to suffer continuing injury by defendants that extended to within one year of when he filed the instant suit. Thus, the court finds that plaintiff's claims are not time-barred.

However, "acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). To constitute state action two requirements must be met: 1) "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and 2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n. 18 (1982).

Private entities, however, generally are not considered state actors. *Meade v. Dillard Dept. Stores*, 275 F.3d 43, 43 (5th Cir. 2001). Nonetheless, "a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir.2005) (citations omitted). Indeed, private parties conspiring with a judge will be deemed to be acting under color of state law no matter if the judge is immune from damages liability. *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S.Ct. 183 (1980). However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345,

31

353 54 (5th Cir.2003) (citation omitted). Furthermore, submitting a false affidavit which influenced a state court decision does not imply that the attorney acted under color of state law. *Id*. Rather, plaintiff must allege facts to plausibly suggest that the state court was a knowing and willing participant in the wrongdoing. *See Richard, supra*.

Here, the undersigned is not persuaded that plaintiff has met the foregoing requirements. Instead, his allegations of collusion, conspiracy, and joint action by the state court judge(s) are conclusory, and do not suffice to support his claim. There are no facts to plausibly suggest that there was an agreement between a state actor and the private defendants.[14] Accordingly, the court necessarily concludes that the private defendants are not state actors subject to liability under § 1983.

c)      Section 1985(3)

The court observes that 42 U.S.C. § 1985(3) prohibits "two or more persons" from conspiring to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To state a cause of action under 42 U.S.C. § 1985(3), plaintiff must allege that (1) defendants were involved in a

---

[14]  The court notes that in plaintiff's supplemental petition to recuse Judge Rambo, he stated that an unnamed individual told him that Loomis and Judge Rambo were working together against him. (Suppl. & Amend. Recusal Motion; Compl. Exh. 13). He further stated that Anika Carston had told him that Judge Rambo was not going to let Lexing hurt Loomis. *Id*. Moreover, Carston explained that Loomis had told him to do what he said, and that Judge Rambo would take care of the rest. *Id*. While the foregoing allegations tend may tend to support plaintiff's motion for recusal, they do not suffice to plausibly allege that Judge Rambo signed on, or agreed to this alleged conspiracy against plaintiff.

In his opposition memoranda, plaintiff also detailed a series of encounters that date from 1995-1997 with attorneys, now judges, Sharp, Rambo, and Leehy. *See e.g.*, Pl. Resp. [doc. # 34]. Again, while these allegations could be used to support recusal, there is no indication of an ongoing conspiracy since that time. Indeed, it appears that there was more than at least a one-year break between those events and the instant litigation. Therefore, they are time-barred, and not actionable. To the extent that plaintiff relies on these accounts to demonstrate that the judges may not have cared for him, the allegations clearly serve that purpose. Nonetheless, they do not suffice to show an agreement or active conspiracy between the judge(s) and the private defendants or other state actor defendants.

conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or persons of the equal protection of the laws; and (3) that defendants acted in furtherance of the object of the conspiracy, whereby (4) the plaintiff was either injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). In addition, the conspiracy must have been motivated by racial animus. *Word of Faith World Outreach Cent. Church v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996). Plaintiff also must "allege specific facts to show an agreement." *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir.2004). Conclusory allegations of conspiracy do not suffice. *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir.1986).

For the same reasons that plaintiff failed to state a claim for conspiracy under § 1983, he also failed to state a claim for relief under § 1985. In addition, he did not allege facts to show that defendants were motivated by racial animus. Accordingly, this claim is subject to dismissal.

## III.    Remaining State Law Claims

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed,[15] the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367. In fact, this is the general rule. *Priester v. Lowndes County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted). The undersigned further observes that interpretation and application of Louisiana's constitutional provisions and various state law tort claims remains an issue within the particular province and expertise of the state courts. Moreover, many of these issues likely already are at issue in at least one of plaintiff's (now) four related cases[16] that he has pending in state court. Accordingly, the twin interests of

---

[15] The court does not discern any basis for the exercise of diversity jurisdiction, 28 U.S.C. § 1332.

[16] *See* doc. # 34, pg. 16.

comity and efficiency dictate that the state law claims be dismissed without prejudice.  28 U.S.C. § 1367(c).

## IV.    Motion for More Definite Statement

The private defendants filed an alternative motion for more definite statement.  In light of the undersigned's proposed disposition of the motions to dismiss, the alternative motion for more definite statement is moot.  Nonetheless, in the event that a higher court disagrees with the recommendation, the undersigned will briefly address the alternative motion.

Federal Rule of Civil Procedure 12(e) provides, in relevant part, that

> [a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. . . .

Fed.R.Civ.P. 12(e).

Rule 12(e) is not intended to be used as a vehicle for discovery or to frustrate Rule 8(a)(2)'s minimal pleading requirements by compelling plaintiff to amend his complaint when it otherwise suffices to withstand a motion to dismiss.  *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).  Furthermore, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small    the pleading . . . must be so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."  *Texaco, Inc. v. Louisiana Land & Expl. Co.*, 113 B.R. 924, 940-41 (M.D. La.1990) (citation omitted).

Plaintiff's 64 page complaint is anything but vague or ambiguous.  While the complaint certainly is repetitive, convoluted, and irrelevant at times, there is no reason, aside from the labor involved, why defendants cannot comprehend plaintiff's suit and admit or deny each allegation.  Accordingly, the alternative motion is denied.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motions to dismiss for lack of subject matter jurisdiction, or alternatively for failure to state a claim upon which relief can be granted [doc. #s 11, 12, & 13] filed by defendants, John Bel Edwards, Marketa Garner Walters, and Keesha Bordelon, in their official capacities, be GRANTED, and that plaintiff's official capacity claims against said defendants for prospective declaratory and injunctive relief (including a stay) under federal law be DISMISSED WITHOUT PREJUDICE.  Fed.R.Civ.P. 12(b)(1).

IT IS FURTHER RECOMMENDED that the motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted [doc. #s 13, 17, & 19] filed by defendants, Keesha Bordelon, in her individual capacity; Albert E. Loomis, III, Mary Hamilton, and Anika Lashaye Carston be GRANTED, and that plaintiff's federal law claims against said defendants, plus Jo Caston, in her individual and official capacities, be DISMISSED, with prejudice.  Fed.R.Civ.P. 12(b)(6).

IT IS FURTHER RECOMMENDED that plaintiff's remaining state law claims be DISMISSED, without prejudice.  28 U.S.C. § 1367(c).

IT IS FURTHER RECOMMENDED that the alternative motion for more definite statement [doc. # s 17 & 19] filed by defendants, Albert E. Loomis, III, Mary Hamilton, and Anika Lashaye Carston, be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 30th day of April 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE